IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| NATIONWIDE PROPERTY & CASUALTY INSURANCE COMPANY<br>Plaintiff,<br><br>v.<br><br>JESSICA ANNE FRARACCIO, *et al.*,<br>Defendants. | Case No. 1:16-cv-1485 |

## MEMORANDUM OPINION

This insurance coverage declaratory judgment action is unusual. The central issue presented is whether an insurer can deny coverage to an insured for causing the death of a child committed to the insured's care on the basis of policy exclusions for intentional acts and physical abuse where, as here, the insured has pled guilty to felony child abuse and felony murder under Virginia law. But before this central issue can be addressed, it is necessary to resolve defendants' motion to dismiss on the basis of abstention in favor of a currently-pending negligence wrongful death action in Virginia state court. In other words, the threshold issue addressed here is whether the coverage issue should be decided now or delayed until after completion of the state wrongful death action.

As this matter has been fully briefed and argued orally, it is now ripe for disposition.

# I.[1]

Plaintiff Nationwide Property & Casualty Insurance Company ("Nationwide") is an Ohio corporation with its principal place of business in Ohio. Nationwide issued the homeowners insurance policy (the "Policy") at issue in this case to Paul Fraraccio, the named insured, for the period of May 24, 2012 to May 24, 2013. Defendant Jessica Anne Fraraccio ("Fraraccio") is Paul Fraraccio's daughter, and she qualifies as an insured under the Policy. Fraraccio is currently incarcerated at the Fluvanna Correctional Center for Women in Fluvanna County, Virginia, as she pled guilty to felony child abuse and felony murder under Virginia law for the death of Elijah Nealey. Guardians *ad litem* represent Fraraccio in this declaratory judgment action and in the state court wrongful death action.[2]

---

[1] The facts recited here are derived (i) from Nationwide's complaint, (ii) the insurance policy and the complaint in the underlying state court wrongful death action, both of which are attached to Nationwide's complaint, (iii) the insured's guilty pleas in the Circuit Court of Prince William County, Virginia, and (iv) the hearing on the motion to dismiss. The exhibits attached to Nationwide's complaint are properly considered at the motion to dismiss stage. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *see also Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (providing that courts can "consider documents . . . attached to the complaint as exhibits" on review of a motion to dismiss). The guilty pleas are public records, and as such judicial notice of these documents is appropriate. *See* Fed. R. Evid. 201; *see also Hall v. Virginia*, 385 F.3d 421, 424 n.3 (4th Cir. 2004) ("We may properly take judicial notice of [public records] in reviewing the dismissal of the complaint under Rule 12(b)(6) . . . .").

[2] Rule 17(c)(2), Fed. R. Civ. P., provides that the "court must appoint a guardian ad litem — or issue another appropriate order — to protect a minor or incompetent person who is unrepresented in an action." Virginia law similarly provides that when a "person under a disability is a party defendant," the court "shall appoint a discreet and competent attorney-at-law as guardian ad litem to such defendant." Va. Code § 8.01-9(A). State law determines whether a defendant is a minor or incompetent. *See* Rule 17(b)(3), Fed. R. Civ. P. Under Virginia law, an incarcerated felon qualifies as a "person under a disability." Va. Code § 8.01-2(6). As a result, Nationwide's motion to appoint a guardian *ad litem* to represent Fraraccio was granted and an attorney was appointed to represent Fraraccio in this action.

Defendants Jennifer and Michael Nealey (the "Nealeys") are Elijah's parents and administrators of Elijah's estate. As such, they brought the underlying wrongful death action against Fraraccio now pending in the Circuit Court of Prince William County, Virginia.[3]

The facts underlying this insurance coverage dispute stem from the death of 23-month old Elijah Nealey at his home in Manassas, Virginia on August 22, 2012 while under Fraraccio's care. In October 2013, Fraraccio pled guilty in the Circuit Court of Prince William County, Virginia to two felonies: (1) abuse and neglect of a child under Va. Code § 18.2-371.1(A), which provides that any "person responsible for the care of a child under the age of 18" is guilty of a felony if "by willful act or willful omission or refusal to provide any necessary care for the child's health [the person] causes or permits serious injury to the life or health of such child" and (2) felony murder under Va. Code § 18.2-33, which provides that the "killing of one accidentally, contrary to the intention of the parties, while in the prosecution of some felonious act . . . is murder of the second degree." In January 2014, Fraraccio was sentenced to forty years for the felony murder conviction and a consecutive ten-year sentence for the child abuse conviction, for a total of fifty years incarceration. Forty-five years of that fifty-year sentence were suspended.

In April 2014, the Circuit Court of Prince William County appointed the Nealeys as administrators of Elijah's estate. Then, in August 2014, the Nealeys filed a wrongful death action in the Circuit Court of Prince William County against Fraraccio, alleging that Fraraccio

---

[3] It appears that Nationwide has issued a reservation of rights with respect to its defense of Fraraccio in the wrongful death action, but the motion to dismiss record is not clear as to whether Nationwide has retained counsel for Fraraccio. The record in the wrongful death action indicates that a guardian *ad litem* was appointed to represent Fraraccio in that action, but the guardian later withdrew. *See Nealey v. Fraraccio*, No. CL14005429-00 (Va. Cir. Ct. Feb. 10, 2017). The most recent record entry on March 6, 2017 in the wrongful death action indicates that the state court is attempting to appoint another guardian *ad litem* for Fraraccio.

negligently caused Elijah's death while Elijah was in Fraraccio's care. The Nealeys seek $4,000,000 in compensatory damages against Fraraccio. Nationwide is not a party to the Nealeys' wrongful death action.

Fraraccio notified Nationwide of the state court wrongful death action, seeking coverage under the Policy. As relevant here, the Policy's personal liability coverage provision states that Nationwide will defend the insured at Nationwide's expense and "will pay damages an insured is legally obligated to pay due to an occurrence," up to the Policy limit of $500,000. Pl. Ex. 1 at G1. The Policy defines "occurrence" as bodily injury or death "resulting from an accident" during the Policy period. *Id.* at 1, G1. Additionally, the policy includes two coverage exclusions: (1) an exclusion barring liability for bodily injury "caused intentionally by or at the direction of an insured, including willful acts the result of which the insured knows or ought to know will follow from the insured's conduct," and (2) an exclusion barring coverage for bodily injury that "result[s] from acts or omissions relating directly or indirectly to" physical abuse. *Id.* at H1, H2.

Nationwide filed this declaratory judgment action to resolve whether the Policy requires Nationwide to defend and indemnify Fraraccio in the underlying wrongful death action. Nationwide contends that the Policy does not afford coverage to Fraraccio because (i) Elijah's death did not result from an accident and therefore was not an "occurrence" under the Policy, (ii) the exclusion for willful acts applies given Fraraccio's guilty plea to felony child abuse, and (iii) the exclusion for physical abuse also applies because Fraraccio pled guilty to abusing Elijah. After Nationwide filed this declaratory judgment action to resolve the coverage issue, the Nealeys filed a motion to dismiss the complaint in this action on the basis of abstention in favor

of the pending state court wrongful death action, contending that the coverage issue can be more appropriately decided in state court.

## II.

Because the Nealeys seek dismissal of this declaratory judgment action, the analysis appropriately begins with a review of the Declaratory Judgment Act and the circumstances in which it is appropriate to entertain such actions. The Act provides that in "a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201 (emphasis added).[4] Based on the text of the Act, the Fourth Circuit has explained that federal courts have "some measure of discretion" to decline to entertain a "declaratory judgment that is otherwise properly within its jurisdiction." *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 375 (4th Cir. 1994). Although the power to entertain declaratory judgment actions is discretionary, it is in general appropriate to exercise this discretion "when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996).

The exercise of declaratory judgment jurisdiction is appropriate here as it will serve to resolve the coverage dispute now, at the outset of the state court wrongful death action,[5] and

---

[4] Subject matter jurisdiction plainly exists, as there is complete diversity of citizenship between the parties and the amount-in-controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a).

[5] Although the Nealeys filed their state court wrongful death action in August 2014, an answer was not filed until December 27, 2016. *See Nealey v. Fraraccio*, No. CL14005429-00 (Va. Cir. Ct. Aug. 7, 2014).

5

thereby settle now whether Nationwide must defend and indemnify Fraraccio in that action. Indeed, the Fourth Circuit, in essentially similar circumstances, recognized that it is imperative to resolve this coverage dispute sooner rather than later in order to avoid the conflict of interest Nationwide now confronts in defending Fraraccio in the underlying wrongful death action. *See Stout v. Grain Dealers Mut. Ins. Co.*, 307 F.2d 521, 523–25 (4th Cir. 1962). The *Stout* case, as here, involved an insured who was the defendant in a state court wrongful death action and an insurer who disputed coverage on the ground that the insured's guilty plea to a state crime (voluntary manslaughter under North Carolina law) precluded coverage under the policy's exclusion for intentional acts.[6] *Id.* at 523, 525. As the Fourth Circuit pointed out in *Stout*, the insurer in these circumstances faces an "obvious conflict of interest" because "it is not possible for the insurer to defend the insured and at the same time to protect its own interests." *Id.* at 524. Specifically, the attorney retained to defend the insured must argue in the state court action that the insured did not act negligently or intentionally, even though the guilty plea indicates that the insured acted intentionally and is therefore not covered by the policy. *Id.* at 524–25.[7] Precisely

---

[6] The North Carolina manslaughter statute divided the offense into "manslaughter" (the intentional killing of a person without malice) and "involuntary manslaughter" (the unintentional killing of another without malice). *Stout v. Grain Dealers Mut. Ins. Co.*, 201 F. Supp. 647, 649 (M.D.N.C. 1962), *aff'd Stout*, 307 F.2d at 525. The insured pled guilty to "manslaughter," and thereby pled guilty to intentionally killing the victim. *Id.* at 649–50.

[7] The Supreme Court of Virginia's decision in *State Farm Fire & Casualty Co. v. Mabry*, 255 Va. 286, 291 (1998), confirms the Fourth Circuit's conclusion that the situation in this case creates a conflict of interest for the insurer. Where the insurer is not a party to the tort litigation, it cannot "independently assert its position" that the insured acted intentionally. *Id.* The insurer also cannot make that argument "in conjunction with providing a defense to its insured" because the "attorney employed by the insurer to defend the insured . . . owes the insured the same duty as if he were privately retained by the insured." *Id.* As a result, the attorney cannot argue that the insured's acts were "intentional because such an argument could expose [the insured] to punitive damages and would not be in his best interest." *Id.*

the same conflict of interest confronts Nationwide in this case, and it follows that it is not possible for Nationwide to defend Fraraccio in the wrongful death action and at the same time protect its own interest in denying coverage to Fraraccio. Absent recourse to a declaratory judgment action, the insurer is stuck between its duty to defend the insured and its interest in asserting the insured is not covered by the insurance policy.[8] As a result, as the Fourth Circuit noted in *Stout*, the "only just and expedient solution" in these circumstances is to entertain the insurer's declaratory judgment action, which "serves the dual purpose of determining with finality [the insurer's] obligation to defend and its ultimate liability for any judgment rendered against the insured." *Id.* at 524.[9] The same result should obtain here; the only just and expedient solution in these circumstances is to proceed to determine the coverage issue in this declaratory judgment action.[10]

---

[8] At this point, Nationwide must defend Fraraccio in the state court action because the Nealeys allege that Fraraccio negligently harmed Elijah, which, if proven, would bring her actions within the scope of the Policy. *See Penn-Am. Ins. Co. v. Coffey*, 368 F.3d 409, 413 (4th Cir. 2004) ("[Under] Virginia law, an insurer's duty to defend arises 'whenever the complaint against the insured alleges facts and circumstances, some of which, if proved, would fall within the risk covered by the policy'") (quoting *Brenner v. Lawyers Title Ins. Corp.*, 240 Va. 185, 189 (1990)).

[9] *See also Nautilus*, 15 F.3d at 375–76 (noting that the Fourth Circuit has "frequently approved the use of federal declaratory judgment actions to resolve disputes over liability insurance coverage, even in advance of a judgment against the insured on the underlying claim for which coverage is sought.").

[10] Nor is this result contrary to the "eight corners rule," which ordinarily imposes a duty to defend based only on the allegations in the state court complaint and the insurance policy at issue. *AES Corp. v. Steadfast Ins. Co.*, 283 Va. 609, 617 (2012). The Fourth Circuit stated in *Stout* that this rule does not apply where, as here, the insurer faces a conflict of interest in defending the state court action. *See Stout*, 307 F.2d at 524; *see also Pompa v. Am. Family Mut. Ins. Co.*, 520 F.3d 1139, 1147–48 (10th Cir. 2008) (concluding that Colorado would recognize an exception to this rule "'when the facts alleged in the complaint ostensibly bring the case within the policy's coverage, but other facts that are not reflected in the complaint and are unrelated to the merits of the plaintiff's action plainly take the case outside the policy coverage'" where the insured's conviction was an "indisputable fact, known to all parties, [that] remove[d] the act in question from coverage") (quoting 1 Allan D.

7

Although it is clear that the exercise of declaratory judgment jurisdiction is appropriate in this case, it is nonetheless necessary to consider whether "federalism, efficiency, and comity" are "sufficiently compelling to justify a refusal to exercise jurisdiction" in light of the Nealeys' pending state court wrongful death action. *Nautilus*, 15 F.3d at 377. In this regard, the Fourth Circuit has established four factors courts must consider in assessing whether dismissal of a federal declaratory judgment action is appropriate in light of a pending state court action:

> (1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts;
> (2) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending; ...
> (3) whether permitting the federal action to go forward would result in unnecessary entanglement between the federal and state court systems, because of overlapping issues of fact or law. ... [and]
> (4) whether the declaratory judgment action is being used merely as a device for procedural fencing — that is, to provide another forum in a race for res judicata or to achieve a federal hearing in a case otherwise not removable.

*Id.* at 377 (quotation marks, citations, and alterations omitted).[11] These factors, carefully considered on the basis of this record, point persuasively to the conclusion that the exercise of declaratory judgment jurisdiction is appropriate in this case.

---

Windt, Insurance Claims and Disputes § 4.4 at 293–94 (4th ed. 2001)). As the *Pompa* court stated, this exception does not undermine the insured's "reasonable expectation of a defense," which is one of the justifications for the eight corners rule, because "an insured can have no reasonable expectation of a defense" where an undisputed fact precludes coverage. *Pompa*, 520 F.3d at 1148. Moreover, this exception serves the "beneficial purpose" of "freeing an insurer from having to defend an action that from the outset clearly falls outside the policy's coverage, particularly when . . . the insurer has no realistic hope of recovering the costs of the defense from its insured." *Id.*

[11] The *Nautilus* court reviewed *de novo* whether the district court properly declined to entertain a declaratory judgment action, but the Fourth Circuit later concluded that a post-*Nautilus* Supreme Court decision established an abuse-of-discretion standard of review for this issue. *See Poston*, 88 F.3d at 258. As a result, even though the *Nautilus* court applied the wrong standard of review, the *Nautilus* factors are still good law; indeed, the *Poston* court applied those factors. *Id.*

To begin with, the first factor — the strength of Virginia's interest in having this coverage dispute decided in a Virginia court — is essentially neutral and does not weigh in favor of dismissal or abstention. Virginia's interest in "protecting its jurisprudence and ... in deciding cases calling for application of its own law" does not apply here because Nationwide is not a party to the state court wrongful death action and the coverage dispute will not be decided in that action. *Penn-Am. Ins. Co. v. Coffey*, 368 F.3d 409, 413 (4th Cir. 2004). Moreover, as the Fourth Circuit recognized in *Coffey*, Virginia does not have a "particularly significant" interest where "any state law issues are standard and unlikely to break new ground." *Id.* (quotation marks omitted). Here, the parties have suggested no reason why this declaratory judgment action will present novel issues of Virginia insurance law.[12] Accordingly, this factor does not support abstention in favor of the pending wrongful death action.

The second factor also does not support abstention. Not only will the coverage issue not be more efficiently resolved in the state court wrongful death action, the issue will not even be presented there, let alone resolved. In the state court wrongful death action, the Nealeys have alleged solely that Fraraccio negligently harmed Elijah, and Fraraccio's counsel cannot argue that Fraraccio willfully harmed Elijah.[13] Moreover, Nationwide cannot raise the coverage issue

---

[12] The Supreme Court of Virginia has made clear that an intentional act "is neither an occurrence nor an accident and therefore is not covered by [a] standard policy." *AES Corp.*, 283 Va. at 618 (quotation marks omitted). For this reason, the Fourth Circuit's decision in *Mitcheson v. Harris*, 955 F.2d 235, 240–41 (4th Cir. 1992), is inapposite because the court held that dismissal of a federal declaratory judgment action was appropriate partly because the federal action presented difficult issues of state law.

[13] *See Mabry*, 255 Va. at 291 (holding that where a dispute exists between an insurer and the insured as to whether the insured acted intentionally or negligently, the attorney retained by the insurer for the insured cannot argue in a tort case that the insured acted intentionally because that argument would expose the insured to punitive damages and "not be in [the insured's] best interest").

in that action because it is not a party to that action. *See Coffey*, 368 F.3d at 409 (concluding that an insurance coverage dispute could not be resolved more efficiently in a state court action where the insurer was not a party to that action). And the Nealeys' argument that Nationwide can simply raise the coverage issue after the state court action concludes unnecessarily postpones resolution of the coverage issue, which is particularly problematic in light of the conflict of interest Nationwide currently faces in defending Fraraccio. Indeed, the Fourth Circuit has stated that in "an ideal world, the policy coverage question would be adjudicated before the state tort suit is tried." *State Farm Fire & Cas. Co. v. Garrity*, 785 F.2d 1225, 1228 (4th Cir. 1986). This declaratory judgment action presents that ideal scenario, and as a result the second factor does not favor abstention because this action is the most efficient and expeditious way to resolve the coverage dispute.[14]

---

[14] With respect to efficiency, the Nealeys appear to rely on the Fourth Circuit's decision in *Indemnity Insurance Co. of North America v. Schriefer*, 142 F.2d 851, 853 (4th Cir. 1944), to argue that Nationwide should raise the coverage dispute after the state court action concludes. Yet that decision is inapposite because there was no "real controversy" between the insured and insurer that could not have been resolved in the state court "or which it was important to determine before [the state court] litigation was brought to hearing." *Id.* Here, a real controversy over coverage exists between Nationwide and Fraraccio, the state court will not address this dispute, and it is important to resolve this dispute as soon as possible. Moreover, there is simply no point in forcing Nationwide to defend Fraraccio and then raise the coverage issue after trial. Even if the Nealeys obtain a judgment that Fraraccio was negligent, Nationwide would not be estopped from asserting that Fraraccio acted intentionally because Nationwide is not a party to the wrongful death action and it has issued a reservation of rights. *See Mabry*, 255 Va. at 288, 290–91 (holding that the insurer is not deemed to have waived or to be estopped from litigating its coverage defense that the insured acted intentionally, even where the insured receives a negligence judgment in an earlier tort action, provided the insurer issues a reservation of rights and is not a party to the tort action).

The Nealeys also argue that resolving the coverage issue here would create piecemeal litigation, whereas dismissal would allow the state court to resolve all issues in the wrongful death action. This argument is also unpersuasive because the coverage issue can be resolved only in this declaratory judgment action, not in the state court action, where that issue is not even presented.

With respect to the third factor, the Nealeys argue that deciding the coverage dispute risks unnecessary entanglement with the underlying wrongful death action because the issue of whether Nationwide must defend and indemnify Fraraccio depends on the yet-to-be-litigated facts underlying Elijah's death. This argument fails. Unnecessary entanglement exists where there are "overlapping issues" of law or fact between the federal declaratory judgment action and the underlying state court action. *Nautilus*, 15 F.3d at 377 (quotation marks omitted). To begin with, there is no risk of overlap with respect to legal issues because the issue of whether Fraraccio intentionally harmed Elijah will not arise in the state court wrongful death action; the only issue there is whether Fraraccio was negligent with respect to her care of Elijah. And as for factual overlap, there is no need to await the litigation of the facts underlying Elijah's death because, at this point, Fraraccio's guilty pleas may well establish that she does not qualify for coverage under the Policy. By pleading guilty to a violation of Va. Code § 18.2-371.1(A), which makes it a felony to cause "serious injury to the life or health of" a child by a "willful act or willful omission or refusal to provide any necessary care," Fraraccio admitted to willful abuse of a child. *See Stout*, 307 F.2d at 523, 525 (concluding that the insured admitted to intentionally killing the victim by pleading guilty to voluntary manslaughter). Although Fraraccio may contest her plea at the summary judgment stage,[15] at this point her plea appears to show that she intentionally harmed Elijah and abused him, either of which is a sufficient ground for denying

---

[15] Under both the Federal Rules of Evidence and Virginia law, guilty pleas are admissible in civil actions. *See* Rule 410(a), Fed. R. Evid.; Va. Code § 8.01-418 (providing that in "any civil action" in which "it is contended that any party thereto pled guilty . . . [to] a criminal offense . . . which arose out of the same occurrence upon which the civil action is based, evidence of said plea . . . as shown by the records of the criminal court shall be admissible"). Accordingly, Nationwide can rely on Fraraccio's pleas to establish that the exclusions bar coverage, but Fraraccio may also present evidence denying or explaining the pleas. *See Stout*, 307 F.2d at 525 (stating that the insured may offer evidence to rebut a guilty plea); *Mikhaylov v. Sales*, 291 Va. 349, 357 & n.7 (2016).

11

coverage under the Policy. As a result, there is no risk of entanglement because resolution of the coverage dispute does not hinge on the litigation of the facts underlying Elijah's death.

As for the fourth and final factor, the Nealeys admit that there is no evidence that Nationwide is using this declaratory judgment action to engage in procedural fencing or forum-shopping. Instead, as in *Coffey*, there is a live and serious question in this case of whether the Policy exclusions apply, and the evidence in this record, as in *Coffey*, leads to the conclusion that Nationwide has appropriately sought a declaratory judgment here to clarify and settle the coverage issue. *Coffey*, 368 F.3d at 414.[16]

In sum, dismissal or abstention is inappropriate at this point because this action will settle the coverage dispute, and none of the *Nautilus* factors compel abstention in favor of the pending wrongful death action. In particular, the current record indicates that the coverage dispute can be resolved here without any risk of entanglement with the wrongful death action. Should further factual development raise a substantial risk of entanglement with the state court wrongful death action, the parties may renew their request for abstention.

III.

For the foregoing reasons, the Nealeys' motion to dismiss on the basis of abstention is denied.

---

[16] Because there is no evidence of procedural fencing in this case, the cases plaintiff relies on in which that factor was present are inapposite. *See Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 424 (4th Cir. 1998); *Cont'l Cas. Co. v. Fuscardo*, 35 F.3d 963, 968 (4th Cir. 1994); *Chapman v. Clarendon Nat'l Ins. Co.*, 299 F. Supp. 2d 559, 564 (E.D. Va. 2004). It is worth noting that the only indication of any procedural mischief involves the Nealeys' complaint in the state court action, which is woefully short of facts with respect to Fraraccio's actions and alleges in conclusory fashion that Fraraccio negligently caused Elijah's death. The dearth of facts and the conclusory allegation arguably suggests that the Nealeys' complaint is a mere ploy designed to circumvent the Policy's exclusions for intentional acts and abuse. *See Pompa*, 520 F.3d at 1149 (noting the problem of "bad-faith allegation[s] framed to trigger an insurance policy") (quotation marks omitted).

An appropriate order will issue. A separate order will issue setting a schedule for discovery and summary judgment.

Alexandria, Virginia
April 24, 2017

/s/
T. S. Ellis, III
United States District Judge